Max BASTIAN, Petitioner,

v.

Ronald MARTINEZ, Industrial Commission of Colorado, and State Compensation Insurance Fund, Respondents.

Nos. 83CA0547, 83CA0549.

Colorado Court of Appeals,
Div. I.

Nov. 1, 1984.

Rehearing Denied Dec. 6, 1984.

Certiorari Denied April 15, 1985.

Paul Conaway, P.C., Paul Conaway, Denver, for petitioner.

Douglas R. Phillips, P.C., Douglas R. Phillips, Denver, for respondent Martinez.

**1374**

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary Ann Whiteside, Asst. Atty. Gen., Denver, for respondent Industrial Com'n.

DeMoulin, Anderson, Campbell and Laugesen, P.C., Thomas M. Schrant, Denver, for respondent State Compensation Ins. Fund.

SMITH, Judge.

In this workmen's compensation case, the employer, Max Bastian, seeks review of a final order of the Industrial Commission which determined, *inter alia*, that the State Compensation Insurance Fund was not liable for the payment of any benefits awarded the claimant, Ronald Martinez. We affirm the order of the Commission.

The relevant facts are not in dispute. Bastian is in the business of training race horses. The Centennial Race Track and the Colorado Racing Commission required that a horse trainer obtain workmen's compensation insurance as a condition to having a trainer's license. Bastian applied for a policy of insurance with the Fund on October 12, 1978, and a policy effective from October 13, 1978, through October 1, 1979, was issued. In October 1979 Bastian did not tender a premium for the following year, and the policy lapsed. He was thereafter notified by the fund that no new policy would be issued until the lapsed policy was audited and any deficiency in premium paid.

In a letter dated November 6, 1979, the Fund requested that Bastian submit payroll information on his business so that the Fund could determine whether any additional premium was owed on the lapsed policy. The amount of the premium charged by the Fund is based on the total wages an employer pays and on the classification of his employees. In December 1979, Bastian's wife called the Fund and requested an extension of time in which to submit the information; however, the payroll information was not furnished, and no further communications between the Fund and Bastian took place. In 1980 Bastian did not train horses at Centennial Race Track.

In 1981 Bastian again commenced training horses at Centennial Race Track and hired the claimant to exercise the horses. Bastian prepared and submitted an application for workmen's compensation insurance to the Fund. The application was received on February 13, 1981, and was accompanied by a check from Bastian in the amount of $116 as an advance payment of the premium.

By letter dated February 20, 1981, the Fund rejected the application because of Bastian's failure to furnish the payroll information requested by the Fund in November 1979. The Fund admits that normally it accepts all applications for insurance and issues a policy that is effective the day after the application is received. However, the Fund has a policy of rejecting such applications in three instances: First, where an applicant has failed to pay a premium on a previously issued policy; secondly, where an applicant has attempted to defraud the Fund by providing false information in an application; and thirdly, where an applicant has failed to provide payroll information for an audit on a previous policy.

The Fund's letter rejecting the application and returning the check did not arrive at Bastian's residence until on or after February 25, 1981. On February 24, 1981, the claimant was injured in an admittedly compensable accident while acting in the course and scope of his employment with Bastian.

On April 2, 1981, Bastian supplied the requested 1979 payroll information to the Fund and a new policy of insurance was issued effective April 3, 1981, through April 1, 1982. Based upon the payroll information submitted by Bastian, the Fund determined that an additional $75 was owed on the previously lapsed policy. Bastian promptly paid the additional premium.

The sole issue presented here is whether the Fund was liable to pay, on Bastian's behalf, any workmen's compensation bene-

fits awarded the claimant because of the injuries he sustained as a result of the accident on February 24, 1981. The hearing officer concluded that the Fund was liable for the payment of such benefits because the Fund had no statutory or contractual authority to reject Bastian's application. The hearing officer further concluded that the Fund failed to notify Bastian of its rejection of his application within a reasonable time and therefore was estopped to deny coverage relative to claimant's accident.

On review, the Commission reversed the decision of the hearing officer and concluded that on the date of claimant's accident Bastian was an uninsured employer. In so ruling the Commission determined that there was no statutory requirement that the Fund accept all applications of insurance and that the Fund was not estopped to deny coverage of the claimant's accident. We agree with the conclusions reached by the Commission.

## I.

Bastian contends here that public policy considerations mandate that the Fund be liable for the payment of any benefits awarded the claimant. Bastian argues that since private carriers are not required to provide workmen's compensation insurance to all employers, the Fund was created to guarantee that an employer applying for insurance would obtain coverage, and therefore, the Fund cannot legitimately reject any application for insurance. We disagree.

■ There is no statutory requirement that the Fund accept each and every application for insurance submitted to it, nor can such a requirement be read into the statute establishing the Fund. *See* § 8–54–101, et seq., C.R.S. Indeed, in our view, implicit in the Fund's authority to make and enter into contracts of insurance with employers, *see* § 8–54–105(2)(b), C.R.S., is the power or authority to reject an application for insurance if the Fund has a legitimate basis for doing so.

This is not a case where the Fund has refused to insure an employer on the basis that the employer is a poor risk and cannot obtain coverage elsewhere. *See* 4 A. Larson, *Workmen's Compensation Law* § 92.52 (1984 ed.). Moreover, under Bastian's interpretation of the Fund's statutory authority, the Fund would be precluded from rejecting an application for insurance on any basis. Such a blanket limitation on the Fund's authority would preclude the Fund from rejecting an application for insurance even if the applicant failed to pay a premium on a previously issued policy or submitted an application containing false and misleading information.

■ Section 8–54–110(2) C.R.S., expressly directs that the Fund's insurance rates be based on a percentage of the payroll of an employer. Obviously, the Fund needs payroll information from employers in order to comply with this statutory mandate. Thus, the Fund's policy of rejecting applications for insurance if an applicant has failed to supply payroll information on a previous policy is wholly consistent with the Fund's statutory mandate. We conclude, therefore, that the Fund's rejection of Bastian's application was a legitimate exercise of its authority.

## II.

We also reject Bastian's contention that the Fund was estopped to deny coverage of claimant's accident.

■ Estoppel is an equitable doctrine to the effect that when one person, by conduct or words, leads another to believe in the existence of a certain condition, and the other person relies thereon to his detriment, the first party is precluded from asserting against the other that a different condition existed. *First National Bank v. Ulibarri*, 38 Colo.App. 428, 557 P.2d 1221 (1976).

In the present case, the hearing officer predicated his conclusion that the Fund was estopped from denying coverage on the Fund's failure to reject Bastian's appli-

cation within a reasonable time. And, he concluded this failure misled Bastian into believing that coverage was in effect on the date claimant was injured. However, at the time Bastian applied for a new policy, it was undisputed that he knew that the previously requested payroll information on the lapsed policy had not been submitted to the Fund. Further, the Fund notified Bastian by letter dated October 30, 1979, that:

> If further coverage is desired a new policy will have to be issued after the cancelled policy has had a final audit and any resulting balance has been cleared.

Given these circumstances, we agree with the Commission that the hearing officer erred in concluding that the Fund was estopped to deny coverage because it did not notify Bastian of its rejection of his application more promptly. *Cf. Genua v. Kilmer,* 37 Colo.App. 365, 546 P.2d 1279 (1976).

Bastian's remaining contentions are without merit.

Order affirmed.

PIERCE and TURSI, JJ., concur.